Good morning. My name is Lynn Allen. I represent American Family Mutual Insurance Company, the appellant in this case. I would like to try to reserve 10 minutes for my rebuttal argument. As you know, this is a case under the doctrine of equitable contribution. American Family has brought this case to seek payment from National Fire & Marine and Ohio Casualty Group for their fair share of defense costs and indemnity payments American Family made on behalf of the mutual insured GFTDC, a general contractor. The issue presented on appeal in this case is whether the National Fire & Marine and Ohio Casualty Group policies are co-primary insurers with American Family for the mutual insured. Well, to sort of set the groundwork, would you agree that Regal Homes v. CNA Insurance controls the outcome of this case? Yes, I do. All right. So it's just both of you are going to give us a different interpretation of why it comes your way, correct? Correct. And it's our position that Regal Homes actually and obviously supports our position that these are co-primary insurers. And the reason you said Regal Homes controls is because this is a diversity case, and so therefore Arizona law applies? Yes, Your Honor. All right. Did American Family ever pay its policy limits? It paid the policy limits under the three policy years that applied. But just a minute, I thought that you do not even challenge on appeal that its policy limits were not exhausted. Just to clarify, there were no defense costs incurred after the exhaustion of the three policies. All right. Now, you have to deal with the record, all right? And if, in fact, these are excess, you would have to have exhausted the primary to get to the excess. The record before us seems to indicate that the primary was, well, not, that your policy was never exhausted. The policy is exhausted upon settlement of the underlying case. So once American Family paid its policy limits, the case was over. So there was no event that then triggered any excess policies to come into play. So we are not arguing here that these two insurance companies would owe under any excess provisions. And we did not. But they have to be co-primary for you to prevail. Absolutely. That's where I was going. All right. Okay. Your Honor, we contend that the district court made two key errors in its interpretation of these insurance policies. The first is that the court disregarded the fact that the National Fire and Marine and Ohio Casualty policies are primary insurance policies with excess other insurance provisions. They are not true excess policies. The second error committed by the district court was reading and applying the National Fire and Ohio Casualty policies first and construing their other insurance provisions first, which is contrary to Arizona law as set forth in Regal Homes. I first want to address the first point, which is that the National Fire and Ohio Casualty Group policies are primary policies by their nature. Well, let's look kind of at this. As I understand, American Family says this insurance is primary except when B applies. Isn't that what it says? That's what it says. So when we look at B, we're looking at excess insurance, correct? Yes. And this insurance is excess over any primary available to you covering liability damages for which you've been added as an additional insured by attachment of an endorsement, correct? Correct. So then when I look at Ohio Casualty's insurance, it says any coverage provided here under shall be excess over any other valid and collectible insurance, whether primary, excess, or contingent. So it seems to me that their policy direct on point says it is excess as to any other insurance, whether primary, excess, or contingent. So since your insurance says it's primary and this insurance in Ohio Casualty says it's always excess, how do I put Ohio Casualty on the same level as you? Because you have read the other insurance provision in the Ohio Casualty policy first. I didn't read it first. I read yours first. I said this insurance is primary except when B applies. So then I go to this and it says when it's excess. So then because I read the excess, I have to go to Ohio Casualty's language and I have to go to National's language to suggest whether they're excess or whether they aren't. Well, Your Honor, I think that the problem with that reasoning and what happened in the District Court and why it's contrary to what the Arizona Court of Appeals says you need to do is that what you are reading is Ohio Casualty's other insurance provision, and you're not to read that when you're construing American Families' other insurance provision. In other words, you start with the basic premise that National Fire and Marine and Ohio Casualty are primary insurance policies. They provide insurance to their insureds on a primary basis because liability for these insurance companies attach upon the happening of an occurrence that is covered under the policy. They are not umbrella policies. But Regal Holmes says when two policies providing for coverage for the same insured each include another insurance clause, both clauses should be given effect if possible. So, again, I'm back to reading the policies. Having read these policies, I'm still having a tough time understanding why the District Court was in error because if I read your policy, I read that language, then I read Ohio Casualty's language, and you've even anticipated what I'm going to say about National's language. And, again, I'm back to the same old thing. How do I make yours other than primary in that circumstance? Well, because you start with the premise that these, by their nature, you have to start with the nature of the policies first before you read the other insurance provision in the appellee's insurance policies. You can't read that first. You have to look at the fact that these are primary insurance policies as defined under Arizona law, under the American Family v. Continental Casualty case and the Bogart case. Those two cases talk about the fact that there are primary policies, such as the ones we have before us, that have excess other insurance provisions. But they are still primary policies. But can you're still sort of dancing around what Judge Smith is saying. Can both the American Family policy and the Ohio Casualty policy and National Fire policies be given effect without depriving GFTDC of coverage? No, they cannot. Because if you read the American Family policy first, it says it is excess over any other primary policies available to the insured. And when you read that and apply it to the National Fire and the Ohio Casualty policies, prior to applying their other insurance provisions, the American Family policy is excess. Well, it seems to me when reading your policy, it says, I'm primary except when another insurance is primary. And then when I read their other insurance policies, they all say, I'm not primary. Nobody requested this insurance be primary, including in an Ohio Casualty. And when I read National, it doesn't say anything about being primary. They both speak about it being excess. So if I read your language, it says, I'm primary except when another insurance is primary, and I find nothing in the other policies to suggest they're primary. And that's why I'm directing your honor to the other cases that come up. Tell me what part of the policy language of Ohio Casualty I need to read to suggest it is primary insurance. The insuring clause of the insurance policy. Which clause are you talking about? I want to read it, because I've read through that policy pretty straight, having been an insurance defense lawyer and talked about this most of my days. And I still can't find a place where it says we're the primary insurance. Well, I agree with your honor. It does not use those words. But what I'm trying to explain, and maybe not doing very well, is that under the American Family v. Continental Casualty case and the Bogart case, they talk about this very issue. And that issue being the confusion that arises when you have these policies that have these other insurance provisions. And those two courts very clearly drew a distinction between primary policies and true excess policies. Now, let me ask you this. Would your case be stronger if either Ohio Casualty or National Fire used the word primary in the language of their policies? Would that be a stronger case for you? I think it would be easier to argue, but I don't think it's a stronger case, because it's the same result. These are primary policies. Well, now, I just, that I can't, that you're taking me too far. All right. If the word primary were in those, wouldn't, I mean, that would kind of be the end of the inquiry for them. I mean, wouldn't that not be a stronger case for you? It would be a stronger case, yes. Okay. We probably wouldn't be here if that was the case. But that doesn't end the inquiry, because these are primary policies by their very nature, as explained in the two cases I've cited. You're at about nine-and-a-half minutes for rebuttal. Do you want to hear what they have to say and then save your time? I just want to make one more point. All right. It's on your nickel, so go ahead. That's fine. The Regal Holmes case supports American Families' position. It is the exact same language, except for the use of the word primary insurance in the American Family policy. That's a big except, though. It is not, because these policies are primary until you read their other insurance provisions. And again, you can't read that first and then apply the American Family policy. If you read American Family first, it's excess. If you read their policies first, they're excess. And that's exactly what Regal Holmes says. The end result is that they cancel each other out. The Regal Holmes court cited two out-of-jurisdiction cases with approval. And based its decision on those two cases. And those are the Oak Builders case out of Illinois and the Pernicherio case, which is out of – I don't have it on me. I know that site. Okay. And both of those cases construed the exact same language. In fact, the Oak Builders case was American Family v. Ohio Casualty Group, exact same two provisions. And the court applied the same reasoning that Regal Holmes adopted and found that Ohio Casualty Group's argument that it's – you have to read that excess provision as part of determining whether it provides coverage. The court said, no, we don't do that. Now, are those published? They are both published decisions. And the court disregarded the type of argument that's being made here. That excess language in the additional insured endorsement is somewhat of a condition of coverage or a definition of the coverage provided to the additional insured. And the court said, no, we're talking about – In Regal Holmes, did they make Zurich a primary insurer? The Zurich policy is identical to American Family. Did they make Zurich a primary insurer? I thought Zurich was an excess insurer in Regal Holmes. No, Zurich was a co-primary insurer with CNA as a result of that holding. There was another insurance company, Auto Owners, which did not have the excess additional insured language American Family has. It only had three exceptions or three situations where it's excess, and it did not include that provision with the additional insured. So the court – there was nothing to compare in that case because the excess language in the Auto Owners policy didn't apply at all. There was no argument for it. Well, I thought in Regal Holmes the general contractor insurance for Auto Owners said, this insurance is primary except when B applies, and then went to an excess insurance with B. This insurance is excess over any other insurance. I thought that's the way it was in Auto Owners. No, the Auto Owners did have that where primary except for B, and then B was excess, and then it had three situations where it was excess. It was excess to builders risk or fire. Or auto or aircraft. Right. But it didn't have that last one that American Family has, which is where excess to other insurance that provides additional insured coverage. So there was no argument that the two were mutually repugnant. When you go to the Zurich policy, which was the second thing that the court considered in Regal Holmes, Zurich is identical to American Family. It says it's primary except for B when it's excess, and then it has that additional insured language. The only thing, it doesn't have the word primary. I thought Zurich said this insurance is excess over any other insurance, whether primary, excess, contingent, or on any other basis, that it is available to the insured as an additional insured. I thought that's what Zurich said. Yes, that's exactly what it says, and that's why I did say the one distinction between Zurich and American Family is American Family uses the word primary. It's a bill or it is excess to any other primary insurance that provides coverage for an additional insured, whereas the Zurich language doesn't include that word primary. But it's our position that it is a distinction without a consequence here, because these two policies are primary until you read their other insurance provision. All right. If you want any rebuttal time, I suggest that you reserve at this point. I will do so. Thank you. Good morning. If it pleases the Court, I'm Scott Salmon. I'm here with the Kavanaugh Law Firm, and I represent Ohio Casualty. My co-appellee counsel, Mr. Barrett, has graciously consented, since our policy positions are essentially the same, to give me the bulk of the time. We'll reserve the last three minutes for him. I'd like to start, if I could, with the question, actually, the last question asked by Judge Smith, which is isn't it true that Zurich is excess? And that was the finding of the Regal Homes Court. That is precisely the finding of the Regal Homes Court. And because it was excess, that's the only reason there was a conflict, which is the standard under Arizona law, if you find a conflict if the two are on the same basis. So since the CNA policy and the Zurich policy were both excess to any other policies, then there was a conflict, and we go to the mutual repugnancy doctrine. We never get there. In a situation where there is primary coverage and excess coverage, we have no mutual repugnancy. We have no conflict. We have one policy which is primary. We have another which is excess. CNA was excess. Auto owners was primary under Regal Homes, and so it held. In fact, if there's any language that is identical on all material parts, in the Regal Homes case to the case we have here, it is the language of the auto owners policy and the CNA policy, because auto owners says exactly like American families policy, unless we're primary, unless something happens, some contingency occurs to make us excess. Well, the only contingency they argue is if the policy issued by Ohio or American National is excess, or excuse me, is primary. Well, it's not. It's not primary, and it says it's not. Well, let me ask you this. Did GFTDC's subcontract with Trustman require that the additional insured coverage Trustman obtained for GFTDC with Ohio Casualty be primary coverage? Did they request that? It did not, and that is key. That's critical, because there were two Regal Homes cases. Regal 1 came up based on a summary judgment that had been granted in the court below, and in Regal 1, the fact determination that needed to be made that resulted in Regal 2 was what did the – it was an oral contract as a subcontract. What did that contract require as relates to this question of who is primary? They submitted it back down for a determination of that fact. Well, every policy involved, CNA's policy, Zurich's policy, and auto owner's policy were all primary as to their own insureds, the subcontractors or the general. So if that was the only meaningful question, then there was no reason to remand. They remanded it for the fact determination as to whether or not, in this case, the subcontractor orally was required to make the CNA policy primary. The court determined after a deposition of, I believe his name was Mr. Brown, that it did not. He didn't even know the difference between primary and excess. Therefore, in his oral contract, he could not have required that it be primary. That was the factual posture that resulted in the second summary judgment in favor of CNA, finding it, again, to be excess only. It came up to the Court of Appeals on the second time. The court looked at the CNA policy, found it expressly to be excess. That was its beginning point. Well, back to the facts in your case, though. You said that there wasn't that requirement there. Is there any evidence in this case suggesting that Trustman suggested that the Ohio Casualty Policy apply to GFTDC on a primary basis? No. In fact, the suggestion is exactly the opposite, and it's stipulated to. It was in the agreed-upon facts, Your Honor. That's actually in the record at ER 941 at paragraph 38. It's found actually in the contract itself that the contract does not require it. That's ER 1129 at 1138 specifically. But it was stipulated to that never was it orally requested. All parties agreed. So there was neither a written nor an oral request that it be primary. And as a consequence, the Ohio Casualty, by its policy, by its terms, became excess, because that's what it says it is unless somebody else makes it something else, which never occurred. Well, now, I asked counsel for the appellant whether both the American Family Policy and the Ohio Casualty Policy and National Fire could, if the policies could be given effect without depriving GFTDC of coverage. What's your answer? My answer is it does not deprive any coverage whatsoever, Your Honor. In fact, that's the situation we have. An escape clause, which is the one discussed in Bogart that was referred to earlier by the Arizona Supreme Court, would deprive coverage. Neither of these, in fact, none of them, in this case, nor in Regal Holmes, were escape clauses. They were excess clauses only. With an excess clause, it does not limit coverage. It simply prioritizes coverage. In this case, and the reason these clauses are favored by the subcontractors that do not require that we name the additional insured on a primary basis is because then the first payments by an insurance company on behalf of the general for its own negligence is the policy that they bought. Only after that policy is completely exhausted does the policy of the subcontractor come on to pay for the general's negligence. In this case, then, all coverages available by National Fire, Ohio Casualty, and, in this case, American Family, would have been available to pay after American Families had exhausted. It simply did not exist. Well, now, there's a difference in the cost of a primary and an excess coverage policy, correct? Excuse me, Your Honor. There's a difference in the cost of a primary and an excess? True. That's true, Your Honor. An excess policy is cheaper. In this particular instance, AI coverage that provides the situation here is that AI coverage that does not provide or does not require to be primary as AI is an extremely preferable situation for the subcontractors. It's a heavily negotiated term. That's the situation we find ourselves in today. The situation that was involved, the coverage that American Family would like to have would require one of two things to take place. Either the subcontracts had to change, in which case, I call them TIB Schraney because I have the same difficulty getting all those, the acronym right. TIB Schraney, the general contractor, had to require in its policy that our policy be primary. It did not. That's undisputed. Well, now, counsel for the appellant makes the argument that, well, I mean, a little bit, a little bit backed away from it because I guess it's undisputed that the words primary don't show up in either your policy or National Fire's policy. But counsel for the appellant says that that's, what, a difference without a distinction or a distinction without a difference or whatever, that she said that doesn't really matter, that it's not there. What's your response? I can't imagine a term that's more important when we're talking about AI or additional insured coverage. That's the summum and bonum in terms of when they are prioritized. Have you waited to use that? You know, I thought just because we had all the folks in the back of the courtroom, I'd throw out a Latin term, Your Honor. It's the whole thing. It really is in this case. And the reason it is is because that's where you decide whether it's primary or excess, by use of the word primary or excess. We don't have to divine those terms from some ambiguity that isn't in the policies. So to say that a policy that uses the term we are primary as opposed to a term that we are excess are essentially the same is a little mystifying to me because that's the whole question here. So how it is that a policy term that does not say it's primary is really primary when it says it's really excess, I'm not sure how we get there. What I would say is instead of arguing that the Zurich policy is identical to the American family policy, which it clearly is not, it would make more sense to argue the Ohio casualty policy, excuse me, the auto owner's policy is very nearly the same and then argue what the distinctions may be, although they don't make a difference. The problem is, and Judge Smith said this, that the problem is once they have said that our policy is primary unless something occurs, they only argue one thing that could have changed that, one exception that could have fit. That is that the Ohio casualty, American nationals policy are, or American fires, excuse me, national fire, sorry. Not anything to do with America. Yes, yes, yes, sorry. National fire. National fire. That those policies are primary when they both say they're excess as it relates to an additional insured. What they provide to their own insureds can't matter. And it doesn't matter in this case. It wouldn't have mattered or they would not have sent it back down in regal homes. There was no reason to remand. And all three policies admittedly are primary as to their own insureds. Well, this, since both you and national fire have different, they both have lawyers. So that says that, and national fire has conceded that you can use most of the time. But the language isn't exactly the same in both of the policies. So the Court wouldn't necessarily have to reach the same result as to both policies. Is that correct? Your Honor, we believe that the arguments are the same because both policies, while using slightly different language, come to the same conclusion. Both of them, in fact, do reach the point of saying that they are excess unless the contract made them primary. Well, do you think one of the policies has stronger language to reach that result than the other? You know, Your Honor, I think that that argument is not really being made by the appellant in this situation. She's lumped, the appellant has lumped them together. But in order to make certain that that result does not occur, I would be happy to defer a little earlier than originally intended to Mr. Barrett to make that argument. I frankly believe his language is every bit as strong and reaches the same ultimate conclusion. Let me ask you one question. Yes, Your Honor. Before you defer, it seems to me that based on what counsel told us about whether they had ever paid out the proceeds of their insurance and whether the excess insurance had been triggered, that the second question in front of us is then irrelevant. That is true, Your Honor. The policy, the payment of their policy limit resolved the case. No defense costs were incurred afterwards, and I believe that Ms. Allen said so. Therefore, it is conceded by all parties and certainly conceded by American family that the only way that you can, that if you find our policies to be excess, then they have no duty to, I think in the words of the Twin City Fire case, no duty to defend, no duty to indemnify, no duty to do anything. And indeed, that's the situation that we have here by accord of all the parties. Now, you argue, or she argues, I guess, sorry, that American Family made a proper tender of insurance to Ohio Casualty, and, of course, you suggest they did not, correct? That is correct, Your Honor. That having been said, we conceded that the, when the TriStar Builders case was overruled and remanded by this Court, that had an effect on, on that issue. And, therefore, if that were the only issue, a remand would be appropriate to let the Federal District Court review those, that situation in light of those facts and that changed law. We submit to the Court that there's no need to do so because this issue is dispositive, the primary excess issue is dispositive. All right. That was my question. You anticipated it. Thank you. Thank you, Your Honor. I'll turn the time over, then, if there are no further questions. Mr. Barrett. Thank you. Good morning. May it please the Court? Good morning. My name is Kevin Barrett from the law firm of Grave Barrett Mature and Phoenix, and I do represent National Fire and Marine Insurance Company in this case. So this is basically just a fight between insurance companies, right, about the A very thrilling fight. I mean, it's unlike some where people are, like, the insurance company is claiming there's no coverage and the party is trying to adhere. The – it's been settled, it's been paid, and so it's just which insurance companies are going to pay, right? That's exactly right, Your Honor. And I think that may be a key point, at least for a public policy sort of stand, is that this isn't a situation where somebody is going to be left bare with no insurance whatsoever. As the Court has already noted, the primary insurance that was available from American Family was sufficient to settle the claims against GFTDC. There was no excess exposure. The company or the person didn't pay anything out of their own pocket. There was nobody left wanting. Well, your language is a little bit different than Ohio Casualty. So why – is your language weaker or stronger? I would actually submit that it's the same. Well, but it isn't exactly the same. It's not exactly the same, but the effect is the same. Both policies start by saying this insurance is excess, and then they move on to a possible exception in the Ohio Casualty case, if there's a written subcontract that requires this insurance to be primary. The National Fire and Marine language simply says, unless the other insurance, that would be the other insurance issued to the named insured subcontractor, and is written explicitly to apply an excess of the National Fire and Marine insurance policy. So whereas it's not exactly the same kind of language, the effect is simply the same. If there's a requirement that the named insured, and in this case, National Fire and Marine stands in slightly different shoes because it had multiple subcontractors in the underlying case, all with the same policy provision, but the same policy provision. And for all of those collective subcontractors, if there was a requirement that the National Fire and Marine insurance policy be primary, and it was a written requirement, we would be exactly in the same shoes as Ohio. And in all these cases, there's nothing in the record before the court that indicates that occurred. So whereas it's not 100 percent the exact same language, the substantive effect is exactly the same. And that's part of the reason why it was easy for National Fire to concede the claim was that American Family hasn't argued that. And I think that that's an important point. And I just want to sum up real quick, and I'll let American Family use its rebuttal time, is that it's already conceded that Regal Homes applies. American Family's argument appears to be as long as any policy ever has another insurance provision, they should be considered primary and they should be considered mutually repugnant. Well, we know from Regal Homes that that cannot possibly be true, because in Regal Homes one insurance provision was found valid, one was found invalid. On its face, American Family's argument does not fly because it's contradicted by Regal Homes. Now, American Family hasn't gone through the steps of working through all of its policy language and then trying to look at the policy language between Ohio and National Fire and maybe pick apart some distinctions. And I think the reason they can't do that is that they don't want you to look at the policy language. They don't want you to look beyond the general summation that, hey, all other insurance provisions are mutually repugnant, because if you do, they lose. So they've summarized and generalized while ignoring what we all concede is the controlling case, Regal Homes. If the panel has any other questions about the distinction in the language, I'll be happy to answer it. Otherwise, I'll be happy to concede the rest of my time. There don't appear to be other questions. Thank you for your argument. Should I just jump in or wait for questions? Go ahead. Jump in. I have, I believe, four points I need to make. The first is the Court had inquired whether, in the Regal Homes case, Zurich was a primary insurer. It, in fact, was a primary insurer. It's at 217 Arizona at page 168. It states, Zurich was the direct primary CGL insurer of Regal. Let me, the reason I got into Zurich first is because it seemed to me that in this Regal Homes case, there was a distinction to be made between Zurich and CNA. And it seemed to me that your coverage is similar to auto owners, which was primary. And it seemed to me that Ohio Casualty's insurance, other insurance, and National Fire's other insurance, is similar to CNA. And in Regal Homes, it's suggested then, you would be the primary auto owners, and that they would be the excess. Well, so I tried to get you into Zurich a little bit so that you could maybe give me a difference. It seems to me that if I follow the Regal Homes theory, your and auto owners, their CNA coverage, and if I follow it to the letter, you then become primary and they become excess. And tell me what in your language makes that different. What makes that difference? Now, what in your policy language, what do I read in what your policy says that makes you a different result than the one I am anticipating given based on Regal? Because American Family provides that its policy is excess to any other primary policy that provides coverage to an additional insured. The auto owners policy does not contain that provision. And you think that makes the difference? Absolutely. And in Regal Homes, Zurich was a primary carrier until the application of the other insurance provision, which is nearly identical to American Families. It just does not use the word primary insurance. I want to talk about circularity, because that is what is important here. We are chasing our tails reading these policies. The Fremont. What do we have to do when we're talking about insurance? Don't we have to construe policies as they are, read them, and if they're clear and unambiguous, we give them the extent of what they say, and if they're not clear and unambiguous, reading the language of the policy. But, Your Honor, the problem is the rule of circularity in Arizona requires that one policy be read before another policy. Fremont and Bogart State, before one reads the other insurance clause in the second policy, we'll start with Ohio Casualty Group, that policy is available, so that the clause in the policy being read first, American Family, is triggered and the first policy becomes unavailable. You cannot, under these rules, you have to read the American Family policy first before you apply the other insurance provision in the Ohio Casualty and National Fire policies. Those policies, those, the other insurance, the excess language in those policies cannot be read while you're construing the American Family policy. If you read the American Family policy first, these policies become unavailable. If you read these policies first, as Judge Wake did, those policies become excess, and it chases around and around and through infinity. You cannot, the problem is that they're trying to argue that because their excess language is included in the additional insured endorsement, that that somehow gives it more effect, and it seems that that argument is being considered by the Court. You cannot read that language until after you construe the American Family policy. These policies are primary by their nature. They only become excess by reading the additional or the other insurance provision. Your time's expired. I'll give you one minute to wrap everything up. Yes, Your Honor. One point that had been made during the appellee's argument is that, you know, we're just talking about which insurance company pays, and somehow that makes that not as important an issue or not as important a public policy issue. The courts in Arizona disagree. In Fremont and in Bogart, this was discussed. It's an important issue that just because it's an insurance company involved doesn't make it any less important. Those cases said that we have this rule, this rule of circularity, this rule of fairness, because it doesn't Well, but the argument really isn't. It isn't as important an issue because an insurance company is involved. The argument and the question I heard the good judge, my colleague, make is we're not really talking about whether the insured got a settlement or got paid and all of the damage has been covered. We're talking about who pays who. Yes, it was just to focus it for the students so they understand what this dispute's about. That's a different idea than this is not important. I'd be the first to suggest it's very important, and I think Arizona courts would too. I don't think counsel would be here. They wouldn't be paid very much if they got up and said my insurance clients are not that important. They're issues. The big important issue was that the person covered has been paid. And that is true. The Arizona courts, you know, do state that one insurance company shouldn't be given a windfall over another, that we shouldn't arbitrarily assign an order to the priority of the policies, and that each needs to be read first to determine whether or not they conflict, and these three policies do conflict. Your Honor, we're asking that you reverse the decision of the district court and remand for phase three of this litigation. Thank you. Thank you both sides for your argument. It was both very helpful, and I think that the panel well understands what both parties are asserting for their clients. This matter will now stand submitted.
judges: Alarcon, Callahan, Smith